## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF ARKANSAS
## HOT SPRINGS DIVISION

**HAWK TECHNOLOGY SYSTEMS, LLC**                                  **PLAINTIFF**


**v.**                          **Case No. CV-2015-6037**


**OAKLAWN JOCKEY CLUB, INC.**                                  **DEFENDANT**


## DEFENDANT'S REPLY BRIEF
## IN SUPPORT OF ITS MOTION TO DISMISS

Comes now the Defendant Oaklawn Jockey Club, Inc. ("Oaklawn") and respectfully submits its Reply Brief in Support of Motion to Dismiss the Second Amended Complaint.

### INTRODUCTION

In support of its Rule 12(b)(6) Motion to Dismiss, Oaklawn submitted an opening brief that details the two patents at issue in this case and the applicable case law. Without repeating any of the facts or legal analysis provided in the opening brief, Oaklawn submits this Reply to target two issues: (1) to address the potential impact of Hawk failing to provide the expert testimony it contended was necessary to overcome Oaklawn's motion; and (2) to submit to the court a thorough and well-reasoned opinion that was issued since the filing of Oaklawn's opening brief and that rejects the very arguments asserted in Hawk's response brief: *Visual Memory LLC v. NVIDIA Corp.*, 2016 U.S. Dist. LEXIS 69543 (D. Del. May 27, 2016).

A.    **Hawk has not submitted the expert testimony it contended was necessary to overcome Oaklawn's Motion to Dismiss.**

In seeking an extension to respond to Oaklawn's Motion to Dismiss, Hawk represented to the Court that expert testimony was required to rebut Oaklawn's Motion. In Hawk's Motion for Extension of Time Within Which It Has to Respond to Defendant's Motion to Dismiss Second Amended Complaint, (Doc. 75), Hawk made the following statements asserting expert testimony was absolutely essential to overcome Oaklawn's Motion to Dismiss:

> Because Oaklawn's allegations are dispositive and strike at the very heart of Hawk's case, expert testimony is necessary, particularly given that this area of law is in the midst of evolving. …
>
> This highly technical analysis requires the opinion of an expert skilled in the art of video monitoring, video production, and broadcast, computer, and network infrastructure. …
>
> In order to submit expert testimony, Hawk respectfully requests a sixty (60) day extension or until June 6, 2016. … Hawk requests the extra time in order to ensure it produces an accurate and sufficient expert report. Additionally, only after such report is complete will Hawk be able to properly respond to Oaklawn's motion.

(Doc. 75, ¶¶ 5, 10, 13).

On June 6, 2016 Hawk filed its Response to Oaklawn's Motion to Dismiss. (Doc. 82). Conspicuously absent from Hawk's Response is any report or affidavit by an expert witness. *Id.* Hawk offers no explanation for its omission of an expert opinion after taking the position that it was essential to defeating Oaklawn's motion. *Id.*

By asking the Court to deny Oaklawn's Motion to Dismiss without providing an expert opinion, (Doc. 82), Hawk has now taken a position that is inconsistent

2

with the position it took in its Motion for an Extension, (Doc. 75), in which Hawk asserted that it could not defeat the motion without an expert opinion. Oaklawn respectfully submits that it would be within the Court's discretion to find this violates either judicial estoppel or the doctrine against inconsistent positions. See *Dupwe v. Wallace*, 355 Ark. 521, 140 S.W.3d 464 (2004). Both judicial estoppel and the doctrine against inconsistent positions prohibit a party from playing "fast and loose" with the court system by changing arguments when it is convenient to do so. *Id*. at 530-31. Here, Hawk successfully procured a significant extension by maintaining that expert testimony was required to overcome Oaklawn's motion. It now asks the Court to deny Oaklawn's motion without the purportedly essential expert testimony, and it offers no explanation for the change in its position.

At a minimum, Hawk diminishes the credibility of its Response by submitting it without the very item it contends was essential to defeat Oaklawn's arguments.

**B.** **The recent decision of *Visual Memory LLC v. NVIDIA Corp.* rejects Hawk's Response Brief arguments.**

It is clear that the parties fundamentally disagree on the current state of the law regarding patents directed to a computer-implemented method or apparatus. In its Response, Hawk takes the overly broad position that patenting a method or apparatus that merely requires computer hardware or software for implementation is sufficient to satisfy 35 U.S.C. § 101. (Doc. 82, pg. 8) (asserting the patents satisfy §101 because they claim "a technological invention that requires computer-era hardware and software, and, indeed, could not have been invented prior to the

3

advent of computer technology"). In support of this argument, Hawk relies heavily on *Enfish LLC v. Microsoft Corp.*, 2016 U.S. App. LEXIS 8699 (Fed. Cir. May 12, 2016), claiming that Oaklawn's descriptions of the '462 and '342 Patents run afoul of the holding in *Enfish*. However, Hawk's characterization of the holding in *Enfish* is too expansive. The court in *Enfish* simply recognized that not "all improvements in computer-related technology are inherently abstract." 2016 U.S. App. LEXIS 8699, *11 (Fed. Cir. May 12, 2016). Hawk's broad application of *Enfish* to its own '462 and '342 Patents is misplaced, and Hawk's interpretation of *Enfish* has already been rejected by courts in the short period of time since *Enfish* was decided. See *e.g.*, *Visual Memory LLC v. NVIDIA Corp.*, 2016 U.S. Dist. LEXIS 69543 (May 27, 2016); see also *In re: TLI Communications LLC Patent Litigation*, 2016 U.S. App. LEXIS 8970 (Fed. Cir. May 17, 2016).

In *Visual Memory*, the district court granted defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), holding the patent was directed to patent-ineligible subject matter. 2016 U.S. Dist. LEXIS 69543 (May 27, 2016). First, the court recognized that the analysis of whether the patent was directed to an abstract idea under 35 U.S.C. §101 was governed by the Supreme Court holdings in *Mayo* and *Alice*, stating, "First the court must determine whether the claims are drawn to a patent-ineligible concept. If the answer is yes, the court must look to 'the elements of the claim both individually and as an ordered combination to see if there is an inventive concept, *i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon

the ineligible concept itself." *Id.* at \*5., quoting *Alice Corp Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355-57 (2014); *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1300 (2012).

"Simply appending conventional steps, specified at a high level of generality, to abstract ideas cannot make those ideas patentable." *Id.*, quoting *Mayo*, 132 S. Ct. 1289, 1300. "Further, 'the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of the idea to a particular technological environment.'" *Id.*, quoting *Alice*, 134 S. Ct. at 2358. "Thus, 'the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention.'" *Id.*, quoting *Alice*, 134 S. Ct. at 2358.

Turning to the first step of the two-step *Alice/Mayo* analysis, the court addressed whether the claims at issue were directed to an abstract idea. The court reviewed the 3 asserted claims, which stated as follows:

> Claim 1 of the '740 patent reads: A computer memory system connectable to a processor and having one or more programmable operational characteristics, said characteristics being defined through configuration by said computer based on the type of said processor, wherein said system is connectable to said processor by a bus, said system comprising:
>
> a main memory connected to said bus; and
>
> a cache connected to said bus;
>
> wherein a programmable operational characteristic of said system determines a type of data stored by said cache.
>
> Claim 6 reads: A computer memory system connectable to a processor and having one or more programmable operational characteristics, said characteristics being defined through configuration by said computer based on the type of said processor comprising:

a main memory, connected to said processor by a bus, including a plurality of pages of a first type and a plurality of pages of a second type; and

a register connected to said memory for holding a page address of a most recently accessed one of said first type pages;

wherein said page address is used to reopen the most recently accessed one of said first type pages after one of said second type pages has been accessed; and wherein a programmable operational characteristic of said system determines a type of data stored in said main memory.

Claim 8 reads: A computer memory system, connectable to a processor and bus master by a bus and having programmable operational characteristics based on characteristics of said processor, comprising:

a plurality of caches connected to said bus;

a main memory connected to said bus and including a plurality of pages of a first and second type; and

a register connected to said memory for holding the page address of the most recently accessed of said first type pages;

wherein a first programmable characteristic of said system determines whether a first of said caches stored only code data or whether said first of said caches stores both non-code data and code data;

wherein a second of said caches performs buffering of data writes to said main memory, and a second programmable characteristic of said system determines whether said second of said caches performs buffering of data solely from said bus master and whether said second of said caches performs buffering of data both from said bus master and said processor;

wherein said page address is used to reopen a most recently accessed of said first type pages after one of said second type pages has been accessed; and

wherein a third programmable operational characteristic of said system determines a type of data stored by, said main memory.

*Id*. at *6-8.

1.   **The *Visual Memory* court rejected the same expansive application of *Enfish* argued by Hawk in this case.**

The court began its analysis of the '740 patent claims by recognizing the recent *Enfish* decision, stating, "the Federal Circuit recently found that claims were not directed to an abstract idea where 'the focus of [those] claims [was] on the specific asserted improvement in computer capabilities…, [rather than] on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." *Id*., citing *Enfish*, *supra*. at *5.

The court then addressed the disagreement between the plaintiff and defendant, which mirrors the positions of Hawk and Oaklawn in the case at hand: "Defendant contends that the claims of the '740 patent are directed to the abstract idea of categorical data storage. Though the claims recite limitations pertaining to cache and memory, code and non-code data, and memory sources, Defendant argues that the abstract idea of categorical data storage is at the 'heart' of the claims. Plaintiff responds that every claim is an apparatus that requires certain elements to operate in a certain way, resulting in a tangible working thing that improves the operation of a computer."  *Id*. at *9-10.  The court agreed with the defendant, holding that the claims were directed to the abstract idea of categorical data storage.  *Id*. at *10; see also *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1347 (Fed. Cir. 2014) (claims directed to collecting, recognizing, and storing data are abstract).

In rejecting the plaintiff's position, the court concluded the plaintiff was attempting to apply *Enfish* too broadly: "Plaintiff relies on the Federal Circuit's recent decision in *Enfish* for the proposition that claims which 'improve the functioning of a computer itself' are patent eligible. Contrary to Plaintiff's argument, however, the question of whether a given claim 'improves the way a computer works' is not, by itself, determinative." *Id.* at *11, citing *Enfish*, 2016 U.S. App. LEXIS 8699. Rather, it is only a "relevant inquiry." *Id.* "Enfish is thus best understood as a case which cautions against oversimplification during step one of *Mayo/Alic*e, **rather than a case which exempts from §101 scrutiny all patents which purport to improve the functioning of a computer**." *Id.* at *12 (emphasis added).

Applying the true holding of *Enfish* to the plaintiff's patent, the *Visual Memory* court held in favor of the defendant: "Although the claims 'touch on what is asserted to be an improvement to computer capabilities,' they are not 'directed to a 'specific' or 'concrete' improvement in the way software operates,' but instead are 'directed to the mere *idea* of' categorical data storage." *Id.* at *14, citing *Yodlee, Inc. v. Plaid Techs., Inc.*, 2016 U.S. Dist. LEXIS 68223 (D. Del. May 23, 2016); *Device Enhancement LLC v. Amazon.com, Inc.*, 2016 U.S. Dist. LEXIS 64600 (D. Del. May 17, 2016) ("it is evident that there is a specificity requirement"). "The '740 patent claims, considered in their entirety are directed to the concept of categorical data storage. That broad concept is an abstract idea, despite the patent's limitation of that idea to a particular technological environment." *Id.* "Plaintiff's repeated

incantations of 'technology' cannot save claims directed to an abstract idea." *Id*. at *16.

> ### 2. The *Visual Memory* court also rejected Hawk's argument that the limitation of an abstract idea to a particular technological environment satisfies step two of the *Alice/Mayo* test.

Having decided that the '740 patent claims were directed to an abstract idea of categorical data storage, the *Visual Memory* court next concluded that the claims also lacked any inventive concept sufficient "to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." 2016 U.S. Dist. LLEXIS 69543 at *17. Therefore, it failed the second part of the *Alice/Mayo* test as well. "Neither a simple instruction to apply an abstract idea on a computer, nor claiming the improved speed or efficiency inherent with applying the abstract idea on a computer, satisfies the requirement of an 'inventive concept.'" *Id*.

Notably, the court rejected the very "machine or transformation" argument advanced by Hawk in its Response. "The claims here are 'recited too broadly and generically to be considered sufficiently specific and meaningful applications of their underlying abstract ideas." *Id*. at *19, citing *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1256 (Fed. Cir. 2014). "While the '740 patent describes the idea of categorical data storage as implemented on a computer, the claimed computer functionality can only be described as generic or conventional." *Id*. Addressing the claims' recitation of generic computer components similar to those included in the Hawk patents, the court reasoned as follows:

> Claim 1 recites generic computer components, specifically a "main memory" and a "cache" connectable via a "bus" to a "processor." The specification acknowledges that these components were known in the art. Further, the functions described, receiving and storing data, are certainly well-understood, routine, conventional activities previously known in the industry. At most, Plaintiff's claims attempt to limit the abstract idea of categorical data storage to a particular technology environment. That is insufficient.

*Id*. at *20; see also *Mortg. Grader, Inc. v. First Choice Loan Servs., Inc.*, 811 F.3d 1314, 1324-25 (Fed. Cir. 2016) ("These generic computer components do not satisfy the inventive concept requirement."); *Content Extraction, supra,* 776 F.3d 1343, 1347 (Fed. Cir. 2014) ("For the role of a computer in a computer-implemented invention to be deemed meaningful in the context of this analysis, it must involve more than performance of well-understood, routine, and conventional activities previously known to the industry"). "The steps here that do nothing more than spell out what it means to apply the abstract idea on a computer cannot confer patent-eligibility." *Id*.

## C.    Hawk's patents are not directed to a specific or concrete improvement in the way software or hardware operates.

Applying the well-reasoned opinion of *Visual Memory* to the case at hand, Oaklawn respectfully submits that the Court should grant its Motion to Dismiss. Like the patent at issue in *Visual Memory*, Hawk's patents merely "touch on what is asserted to be an improvement to computer capabilities." 2016 U.S. Dist. LLEXIS 69543 at *14. They are not "directed to a specific or concrete improvement in the way software operates." *Id*. The '462 and '342 Patent claims, considered in their entirety, are directed to the concept of receiving, editing and storing video images.

This broad concept "is an abstract idea, despite the patent's limitations of that idea to a particular technological environment." *Id*. Hawk's "repeated incantations of 'technology' cannot save claims directed to an abstract idea." *Id*. at *16.

**D.   Hawk's Second Amended Complaint failed to plead compliance with the Federal Marking Statute, 35 U.S.C. § 286.**

Lastly, Oaklawn disagrees with Hawk's contention that it was not required to plead compliance with the Federal Marking Statute. (Doc. 73, pgs. 20-21). Hawk provides no case law to support its claim that including a catch-all assertion in its complaint that "[a]ll conditions precedent to bringing this action have occurred or been waived" is sufficient. (Doc. 73, pg. 21). Moreover, to the extent Hawk argues its failure to plead compliance with the Marking Statute is excused because it only asserts infringement of method claims of Patent '462, Oaklawn requests that it be bound by this position going forward and be prohibited from asserting infringement of any apparatus claims contained in the Patent.

CONCLUSION

Defendant Oaklawn Jockey Club, Inc. respectfully requests that the Court grant its Motion to Dismiss Plaintiff's Second Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6). In responding to Oaklawn's Motion, Hawk fails to submit the expert testimony it asserted was essential to rebut Oaklawn's entitlement to dismissal. Instead, Hawk presents an overly broad argument unsupported by case law that, if adopted, would deem *any* method or apparatus requiring computer implementation to be patentable subject matter. Thus, Oaklawn respectfully

submits that the Court should reject Hawk's arguments and grant Defendant's Motion to Dismiss.

Respectfully submitted,

FRIDAY, ELDREDGE & CLARK, LLP
James M. Simpson, No. 77125
Kimberly D. Young, No. 2003124
400 West Capitol Avenue, Suite 2000
Little Rock, AR 72201-3522
(501) 376-2011
simpson@fridayfirm.com
kyoung@fridayfirm.com


*/s/ Kimberly D. Young*
        Kimberly D. Young

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was electronically filed on this 24th day of June 2016, resulting in ECF notifications from the United States District Court to:


Joshua Q. Hurst
Q. Byrum Hurst
HURST LAW GROUP
518 Ouachita Avenue
Hot Springs, Arkansas 71901
Phone: 501.623.2565
qbyrum@hurstlaw.org
josh@hurstlaw.org

David A. Bailey, Texas Bar No. 24078177
ANDRADE & BAILEY, PLLC
1701 Gateway Boulevard, Suite 333
Richardson, Texas 75080
Phone: 972.372.4235
dbailey@lodb.net


*/s/ Kimberly D. Young*
Kimberly D. Young

13